Ronnie P. WEINHOLD and Sandra D. Berreth–Weinhold, Debtors.

John K. Borowski, Plaintiff,

v.

Ronnie P. Weinhold and Sandra D. Berreth–Weinhold, Defendants.

Bankruptcy No. 05–43070–svk.
Adversary No. 06–2207.

United States Bankruptcy Court,
E.D. Wisconsin.

Aug. 28, 2006.

---

Christopher S. Carson, Carson Law Office, Elm Grove, WI, for Debtors.

## MEMORANDUM DECISION IN SUPPORT OF ORDER DETERMINING THAT DEBTORS' DRIVEWAY IS NOT A NUISANCE

SUSAN V. KELLEY, Bankruptcy Judge.

Ronnie P. Weinhold and Sandra D. Berreth–Weinhold (hereinafter, the "Debtors") owned a parcel of property in the city of Oak Creek, Wisconsin. The front part of the parcel abutted Ryan Road, and included a single family residence and two-car garage; the rear portion was unimproved vacant land, with no access to Ryan Road. The Debtors decided to subdivide the property, and build a new residence on the rear portion. The Debtors and John Borowski entered into negotiations for the sale of the front parcel to Borowski. In 1999, the Debtors began renting the front parcel to Borowski, and the Debtors and Borowski ultimately executed a Real Estate Sales Agreement dated March 24, 2000.

As part of the sale negotiations, the property lines were redrawn to allow a six-foot strip of land to connect the rear parcel to Ryan Road. In addition, a Driveway Easement Agreement executed by the Debtors (when they still owned both parcels) created a four-foot easement on the front parcel to allow for a ten-foot ingress and egress from the rear parcel to Ryan Road.[1]

After Borowski purchased the front parcel, he constructed a shed on the spot where the Debtors' garage had previously stood. He then built a new 4-car garage nearly 100 feet behind the shed; this new garage is only ten feet from the rear parcel's property line, and contains a cement parking pad that abuts the easement.

While the Debtors' new residence was being constructed on the rear parcel, they used a gravel driveway to access Ryan Road (utilizing their six-foot strip as well as the four-foot easement on Borowski's property). Borowski and the Debtors discussed the installation of a common driveway for accessing both properties; a paving company even drew up plans for a common driveway. However, when the common driveway negotiations fell through, Borowski paved his driveway with asphalt, and, shortly thereafter, the Debtors hired another contractor to construct a cement driveway. Borowski's asphalt driveway was paved to the boundary of the easement, and the Debtors' cement driveway, consisting of the four-foot easement and six-foot strip of the Debtors' land, runs parallel to and abuts Borowski's for some 200 feet.[2] Because they were constructed separately, the driveways differ in height at various points. In some areas, the Debtors' cement driveway is 12

---

1. Borowski contends that he did not know about the Driveway Easement Agreement and never would have purchased the property subject to that Agreement. For purposes of this Memorandum Decision, the Court will assume the Driveway Easement Agreement was legally executed and properly recorded.

2. Borowski claims that the Debtors' driveway encroaches on his land beyond the easement boundary in some places. For purposes of this Decision, it is assumed that the Debtors' driveway is confined to the easement area.

inches higher than Borowski's asphalt driveway.

The relationship between the Debtors and Borowski soured, and on September 9, 2005, Borowski filed a 38–page complaint against the Debtors in Milwaukee County Circuit Court, alleging various causes of action, including a claim that the Debtors' cement driveway is a private nuisance. The Debtors responded with their chapter 7 bankruptcy petition on October 14, 2005. Borowski moved for relief from the stay of Bankruptcy Code § 362, seeking to continue his lawsuit in state court. The Debtors objected, and a hearing was scheduled. After that hearing was adjourned, Borowski filed a Motion to Abstain from Determining Claims and for Extension of Time to Commence Action under 11 U.S.C. § 523. The Court held a hearing on Borowski's Motions on February 17, 2006, and on the same day issued an order denying the Motion for Relief from Stay, denying the Motion to Abstain, and granting the Motion for Extension of Time to file a nondischargeability action. Borowski then timely filed a Complaint alleging that the Debtors' debts to Borowski are nondischargeable.

On June 28, 2006, Mrs. Weinhold filed correspondence construed by the Court as a Motion for Sanctions against Borowski for violating the automatic stay. At the hearing on this Motion, after consulting with the parties as to a course of action that would advance the resolution of this adversary proceeding, the Court set a briefing schedule on the sole issue of whether the Debtors' driveway constituted a nuisance under Wisconsin law. The parties filed briefs, and the Court conducted an evidentiary hearing on August 11, 2006. At the outset of the evidentiary hearing, the parties agreed that the Court would be determining solely whether the Debtors' driveway constituted an actionable nuisance under Wisconsin law, and that issues of liability would be left for another day if the driveway was found to be a nuisance.

Borowski asserts that the Debtors' driveway is a nuisance for several reasons: 1) it promotes the accumulation of snow and leaves along the edge of the driveway, which prevents visual detection of the raised driveway; 2) it creates an unreasonable risk of tripping and falling; 3) it causes wind-blown debris, water, and snow to accumulate on Borowski's driveway; 4) it causes debris and weeds to accumulate in catch basins on Borowski's driveway; 5) it promotes the drainage of water onto Borowski's property; 6) it exposes Borowski and his tenant to the risk of litigation if injury occurs as a result of the driveway; 7) it impairs the ability to remove snowfall accumulations; 8) it poses a navigation hazard at night; 9) it promotes trespass onto the Borowski's property by the Debtors' invitees; and 10) it impairs Borowski's ability to sell his property. In response, the Debtors contend that Borowski's complaints do not rise to a "substantial interference," and that all of these asserted problems do not make the Debtors' driveway a nuisance.

Borowski introduced evidence that the driveway caused the enumerated problems. For example, he testified that before the Debtors' driveway was constructed, he did not experience flooding problems on his property. He also testified that the driveway causes debris to accumulate into the catch basins on his driveway, and that it is a constant chore to clean these catch basins. While Borowski is also generally concerned about the safety of his children playing on his driveway, he testified that he has experienced injuries after falling off his all-terrain vehicle while attempting to plow the snow, colliding with the raised edge of the Debtors' driveway. Further, Borow-

ski testified that skateboarders have congregated on the driveway, and that he has been present when someone fell off a scooter. According to Borowski, delivery vehicles prefer not to use the concrete driveway and instead use Borowski's driveway to make the Debtors' deliveries because it is difficult to negotiate a large vehicle along the concrete driveway. Borowski also testified that Mr. Weinhold has at least once driven off his driveway while it was snowing. The driveway's unusual shape and raised edge also prevents Borowski from utilizing the concrete pad next to his garage to store his boat and trailers. Finally, Borowski testified that the driveway has made it difficult to rent or sell his property, and that his current tenant is willing to purchase the property only if the driveway is removed. Borowski also presented an expert witness who testified that the driveway poses danger of tripping and bodily injury, particularly because of the height of the concrete driveway in places. On cross-examination, Borowski admitted that skateboarders had only used the driveway once, and they left when he told them to go. He also acknowledged that other than the incident when he collided with the driveway on the snow plow, no one has been injured by tripping or falling on the driveway. He also admitted that after the Debtors had created additional drainage escapes, he had not experienced water leaking into his garage.

The Debtors presented several witnesses in their defense, including an expert witness. The engineer who drafted the Certified Survey Maps and drainage plans for the property testified that the driveway was built according to specifications. However, because Borowski had paved his driveway all the way up to the boundary line, eliminating any green space between the two driveways, the contemplated drainage scheme does not function entirely as envisioned. The Debtors' expert in building operations and home inspection testified that he did not believe the driveway posed any greater risk of injury than what is normally found on or near driveways (for example, culverts or landscaping). While he was inspecting the property, a large truck traversed the Debtors' driveway without any problems. The expert testified that in his opinion, the water drainage was operating as it should, and that the drainage issues had largely been eliminated through the Debtors' creating additional drainage escapes. The contractor who installed the cement driveway stated that it had been inspected at the time of construction by the building inspector and had passed the requisite inspections.

"It has been said that '[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance." It has meant all things to all people, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie.'" *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8 ¶, 24, 277 Wis.2d 635, 655, 691 N.W.2d 658, 668 (quoting W. Page Keeton et al., *Prosser and Keeton on Torts* § 86, at 616 (5th ed. Lawyers ed.1984)). Wisconsin courts have ventured into this wilderness on several occasions, and have emerged with a clear interpretation of the law.

"A nuisance is a condition or activity which unduly interferes with the use of land or a public place." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶ 21, 254 Wis.2d 77, 102, 646 N.W.2d 777, 788. Although the law recognizes both public and private types of nuisance claims, in a context similar to the one at bar, the court of appeals explained:

"In Wisconsin, a private nuisance is a continuing activity or condition which interferes with the use and enjoyment of neighboring property so unreasonably that liability results. Liability generally attaches only if the defendant's conduct is unreasonable under the circumstances." *Schultz v. Trascher*, 2002 WI App 4, ¶ 23, 249 Wis.2d 722, 735, 640 N.W.2d 130, 137.

■ In analyzing the law of private nuisance, the Wisconsin Supreme Court relies on the Restatement (Second) of Torts:

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent ... conduct ....

*Milwaukee Metro. Sewerage Dist.*, 2005 WI 8, ¶ 32, 277 Wis.2d at 660, 691 N.W.2d at 671 (quoting Restatement (Second) of Torts § 822 (1977)). In other words, "one is subject to liability for a private nuisance if his conduct is a legal cause of an invasion of a private interest in land and the action is intentional and unreasonable or unintentional and otherwise actionable." *CEW Mgmt. Corp. v. First Fed. Sav. & Loan Ass'n*, 88 Wis.2d 631, 633, 277 N.W.2d 766, 767 (1979).

■ Further, "[a]s long as the interference is unreasonable and substantial, rather than petty or trifling, virtually any disturbance of the enjoyment of the property may amount to a nuisance." *Krueger v. Mitchell*, 112 Wis.2d 88, 106, 332 N.W.2d 733, 742 (1983). (internal quotations omitted). "There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." *Id.* (quoting Restatement (Second) of Torts § 821F). The court defined "significant harm" as:

[H]arm of importance, involving more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests before he can have an action for a public or private nuisance ... Likewise in the case of a private nuisance, there must be a real and appreciable interference with the plaintiff's use or enjoyment of his land before he can have a cause of action.

*Id.* at 106–107, 332 N.W.2d at 742 (quoting Restatement (Second of Torts) § 821F cmt. c).

■ The *Krueger* court further explained the appropriate inquiry into whether an actionable nuisance exists:

The focus in determining whether a particular nuisance is actionable depends on whether the interference with the use and enjoyment of land is unreasonable and substantial. Property damages or actual physical injuries resulting from one nuisance may be so trifling as to [be] uncompensable, while the annoyance, inconvenience and discomfort caused by another may be great. Therefore we find that it is inappropriate to decide whether a nuisance is actionable based on the type of damages alleged, *e.g.*, actual physical injuries or property damages as contrasted to annoyance, inconvenience or discomfort. Rather, the touchstone is whether the injuries are substantial.

*Id.* at 107–108, 332 N.W.2d at 743. Finally, "[w]hether the injuries claimed in a particular action are substantial depends on the particular facts in light of the effect the complained of activity would have on a person of ordinary sensibilities." *Id.* at 108, 332 N.W.2d at 743 (citing *Bie v. In-*

*gersoll,* 27 Wis.2d 490, 493, 135 N.W.2d 250, 252 (1965)). The question to be determined is whether the Debtors' driveway so unreasonably and substantially interferes with Borowski's use and enjoyment of his property that liability results.

█ In his brief, Borowski primarily relies on three Wisconsin cases in support of his argument. First, in *Hunter v. Mc-Donald,* 78 Wis.2d 338, 254 N.W.2d 282 (1977), after a neighbor installed speed bumps and placed a fence, fieldstones and steel posts along a driveway easement, the plaintiff sued, alleging that the defendant's conduct made it difficult to drive on the driveway and wrongfully interfered with his property rights. *Id.* at 339–343, 254 N.W.2d at 283–285. The Wisconsin Supreme Court agreed with the plaintiff, holding that even though the obstacles the defendant had placed along the driveway were technically on the defendant's property, he had wrongfully interfered with the plaintiff's right to use the easement. *Id.* at 345–346, 254 N.W.2d at 286.

Borowski cites another driveway case, *Schultz v. Trascher,* 2002 WI App 4, 249 Wis.2d 722, 640 N.W.2d 130. There, the plaintiff's driveway encroached on the defendant's property by almost a foot. *Id.* at 730, 640 N.W.2d at 134. When the defendant discovered this encroachment, in order to protect herself from adverse possession claims, she removed the part of the driveway that fell on her property and constructed a four-foot chain link fence that ran within two inches of the property line. *Id.* The plaintiff sued the defendant for adverse possession and prescriptive easement; however, after dismissing those two claims, and after visiting the driveway and attempting to drive the plaintiff's car into her garage, the trial court construed the plaintiff's pleading as claiming a private nuisance, and granted her relief. *Id.* at 731, 640 N.W.2d at 135. The defendant

appealed, and the court of appeals concluded that the evidence supported the private nuisance claim in that the defendant's actions prevented the plaintiff from driving on and using her driveway; this interference unreasonably impaired the plaintiff's use and enjoyment of her property. *Id.* at 736, 640 N.W.2d at 137.

Finally, Borowski cites *Physicians Plus Insurance Corp. v. Midwest Mutual Insurance Co.,* 2002 WI 80, 254 Wis.2d 77, 646 N.W.2d 777. In *Physicians Plus,* plaintiffs claimed that tree branches that obscured a stop sign caused an auto accident, and that the defendants failed to remove the hazard even though they had knowledge of it. *Id.* ¶ 9, 254 Wis.2d at 93, 646 N.W.2d at 784. The supreme court held that the tree branches constituted a public nuisance: in obstructing the stop sign, the tree branches "substantially or unduly interfered with the use of a public place or with the activities of an entire community." *Id.* ¶¶ 21, 36, 254 Wis.2d at 102, 122, 646 N.W.2d at 788, 798. The court then held the municipality, the county, and the property owners liable, stating that they each had a duty to remove the nuisance conditions, and failure to do so was negligence per se. *Id.* ¶¶ 36, 43, 254 Wis.2d at 121, 126–127, 646 N.W.2d at 798, 801.

The cases cited by Borowski are distinguishable from this case. In both *Hunter* and *Trascher,* the obstacles placed along the driveways actually physically interfered with the ability of the plaintiffs to drive on their driveways. In *Trascher,* the court summarized the nuisance: "Schultz was unable to drive her car in or out of her garage as a result of Trascher's placement of the fence." 2002 WI App 4, ¶ 4, 249 Wis.2d at 727, 640 N.W.2d at 134 n. 2. The defendant in *Hunter* "tightened up" the plaintiff's road, and "There was testimony as to the difficulty of driving a large

car between the fence posts and at the same time avoiding the rocks which were placed just beyond the posts at the curve in the road. This problem was particularly serious in the winter." 78 Wis.2d at 340, 254 N.W.2d at 284. In contrast, Borowski does not assert that the Debtors' driveway actually interferes with his ability to drive on his driveway or prevents him from entering his garage. From the testimony and photographs presented, it is clear that Borowski has no problem at all driving the entire length of his driveway from Ryan Road to his garage. The only apparent interference with Borowski's property is his difficulty in parking boats or large trailers on the concrete pad outside his garage. While it may take some deft maneuvering to park his boat or trailer on the concrete pad, these challenges are more a function of the unusual angle posed by the property lines than the Debtors' construction of the driveway. In short, the Debtors' driveway does not substantially or unreasonably interfere with Borowski's property rights when compared to the situations in *Trascher* and *Hunter.*

The final case on which Borowski relies, *Physicians Plus,* involved an overgrown tree that interfered with the rights of the general public to view a stop sign. Here, there is no allegation that the Debtors' driveway is a public nuisance or that the driveway obstructs anything. There is no evidence that an emergency vehicle would have any difficulty in using Borowski's driveway or that the Debtors' driveway otherwise poses the hazard of a stop sign that is hidden from view. Although Borowski alleges that he was thrown off his ATV because snow concealed the boundary of the two driveways, he also testified that he knows the concrete driveway is raised in certain areas, and that he believes the raised areas require caution when traveling on or near them. To the extent Bo-

rowski compares the potential for injury from the raised driveway to the potential for injury from a concealed stop sign, the comparison fails. The obstruction of a stop sign on a highway is an obvious danger which was called "negligence per se," by the Wisconsin Supreme Court, while the Debtors' expert witness testified that the difference in grade between the Debtors' and Borowski's driveways did not create an unreasonable or dangerous condition.

The Court concludes that the injuries (or potential injuries) claimed by Borowski are simply insufficient to render the Debtors' driveway a nuisance under Wisconsin law. First, the natural accumulation of snow, leaves, weeds, and debris along the edge of the driveway is nothing more than a petty annoyance. Borowski has not testified nor offered any evidence that their removal has actually interfered with his or his tenant's use or enjoyment of the land. In fact, Borowski even testified that he (or his tenant) would have to clear the catch basins anyway. Also, common sense dictates that when snow accumulates anywhere, that place will be more dangerous. Although somewhat of an annoyance, snow removal may take a few more minutes and require a bit more caution, but it is not an unreasonable and substantial invasion of Borowski's use and enjoyment of his land due to the Debtors' driveway.

█ Next, as to the trip hazard posed by the elevated driveway, Borowski has failed to show how this aspect of the driveway unreasonably and substantially interferes with Borowski's enjoyment of Borowski's land. The Debtors' expert compared this sort of hazard to the common "hazard" posed by concrete steps; these hazards are everywhere, including on Borowski's property, so the raised ledge is certainly not unreasonable. Similarly, the fact that

Borowski does not allow his children to play on the driveway for fear that they will trip and fall does not render the driveway a nuisance. Borowski testified that no injuries have occurred as a result of a trip or fall on the raised concrete. The mere anticipation that a private nuisance may occur is not grounds for an action in private nuisance. *Priewe v. Fitzsimons & Connell Co.*, 117 Wis. 497, 94 N.W. 317 (1903); *CEW Mgmt. Corp.*, 88 Wis.2d 631, 277 N.W.2d 766 (while the defendant's stripping of vegetation may have created conditions that would eventually lead to a water runoff invasion of the neighbor's property, the cause of action in nuisance arose only when water actually ran off and invaded the plaintiff's property, and the defendant failed to prevent it); *see also Krejci v. Lojeski*, 275 Wis. 20, 80 N.W.2d 794 (1957) (water box that protruded one inch above the public sidewalk was not a nuisance as a matter of law, and abutting landowner was not held liable even though plaintiff tripped and fell).

Borowski also has failed to demonstrate an unreasonable or substantial injury with respect to his allegation that the Debtors' driveway promotes the drainage of water onto Borowski's property. At the portion of the property where the tree roots apparently raise the concrete driveway to funnel the water onto Borowski's property, both Borowski and Borowski's expert testified that they had not even noticed the alleged funneling effect until either the day before the hearing or during the presentation of evidence at the hearing. This condition is hardly a substantial invasion of Borowski's rights if Borowski had never noticed it before. Also, if a water drainage problem had created flooding on Borowski's property and into his garage at the outset of the lawsuit, there was testimony that the drainage issue has been rectified when the Debtors installed additional drainage holes. Water accumulating because of a failure to unclog Borowski's catch basins is hardly the fault of the Debtors. *See Zink v. Khwaja*, 2000 WI App 58 ¶¶ 9, 11, 233 Wis.2d 691, 697, 608 N.W.2d 394, 397 (private nuisance claim failed because plaintiff did not prove that the defendant's actions were the legal cause of the invasion, including that "the flooding [the plaintiff] experienced may have been caused by other events and not by the actions of the [defendant]").

Borowski alleges that the concrete driveway poses a navigation hazard during periods of darkness. Although neither expert witness observed the properties at night, the Debtors' expert witness suggested that darkness poses a navigation hazard under any circumstance. Borowski and his tenant understand the condition of the Debtors' driveway, there is a reflective marker posted in at least one location along the driveway, and headlights (and caution) are advisable when driving at night. The mere fact that darkness requires a driver to exercise more caution does not mean that the driveway is a nuisance. *Cf. Bauder v. Delavan–Darien Sch. Dist.*, 207 Wis.2d 310, 317–318, 558 N.W.2d 881, 884 (Ct.App.1996) (playing indoor soccer in a school gymnasium is not a nuisance because gymnasiums are places where various sporting activities occur).

The allegation that the Debtors' driveway promotes trespass on Borowski's property is entirely speculative. Borowski's expert testified that in his experience skateboarders congregate around long stretches of a straight-edge surface. Borowski has also testified that he observed, on one instance, a group of youths hanging around the driveway. Borowski then admitted that after he asked the kids to leave, they left; apparently this is the only instance of skateboarding trespassers. Where injuries are simply too remote and

speculative, they cannot support a cause of action in nuisance. *Hay v. Weber,* 79 Wis. 587, 48 N.W. 859 (1891) ("It is difficult to perceive how such obstruction could result in such damage, but, assuming that it would, yet such damage would be too remote and speculative to constitute the basis of a private action at law or in equity").

 Finally, Borowski's evidence did not support his claim that the concrete driveway impairs his ability to sell the property. Under cross-examination, Borowski testified that his property's value has actually increased, and that the property has never been unoccupied, save one or two weeks in January 2006. Borowski never listed the property for sale with a real estate broker; he preferred posting a sign and using "word of mouth," and he found a satisfactory tenant who was willing to sign an option to purchase the property. Borowski drafted the option himself, including the condition that the "fraudulently attached" easement and "hazardous drive" will be removed before the option to purchase is exercised. He did not introduce any appraisal testimony that the existence of the Debtors' driveway negatively impacts the value of Borowski's property. Whether a potential purchaser or tenant was dissatisfied with the appearance of the concrete driveway is a matter of personal preference, as reinforced by the Debtors' expert testimony.

Upon review of the evidence, the Court is satisfied that Borowski's claims about the driveway do not constitute more than a petty annoyance; Borowski's concerns certainly do not rise to the level of a substantial or unreasonable interference with Borowski's property rights. The underlying tortious conduct is a necessary element of a private nuisance claim grounded in negligence. *Milwaukee Metro. Sewerage Dist.,* 2005 WI 8, ¶ 44, 277 Wis.2d at 667, 691 N.W.2d at 674. Having

failed to prove this essential element, that the Debtors' driveway has substantially or unreasonably interfered with Borowski's use and enjoyment of his property, Borowski cannot proceed on his claim to determine liability for the alleged nuisance.

A separate Order will issue declaring that the Debtors' driveway does not constitute a nuisance under Wisconsin law.