LEAGUE OF WISCONSIN MUNICIPALITIES, Plaintiff,

1000 FRIENDS OF WISCONSIN, Municipal Environmental Group, Citizens For A Better Environment, River Alliance of Wisconsin, Inc., and Town of Caledonia, Plaintiffs-Appellants,†

v.

WISCONSIN DEPARTMENT OF COMMERCE, Defendant-Respondent,

WISCONSIN BUILDERS ASSOCIATION, Wisconsin Realtors Association, Lee Realty of Sheboygan, Inc., Wisconsin On-Site Waste Disposal Association, Dane County Towns Association, Town of Washington, Dean Blegen, Del Weiff and Wisconsin Farm Bureau, Intervenors-Defendants-Respondents.

Court of Appeals

*No. 01–1035. Submitted on briefs December 7, 2001.—Decided May 9, 2002.*

2002 WI App 137

(Also reported in 647 N.W.2d 301.)

† Petition to review denied 9-26-02.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Richard L. Bolton* of *Boardman, Suhr, Curry & Field, LLP* and *Paul G. Kent* of *Davis & Kuelthau, S.C.*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Frank D. Remington*, assistant attorney general, *Robert A. Selk*, assistant attorney general, *Thomas C. Bellavia*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the intervenors-defendants-respondents, the cause was submitted on the brief of *Douglas B. Clark* of *Foley & Lardner*, Madison.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. 1000 Friends of Wisconsin, three other environmental organizations and a township appeal a circuit court order denying their request for a judgment declaring WIS. ADMIN. CODE ch. Comm 83 ("Private Onsite Wastewater Treatment Systems") invalid.[1] The Department of Commerce and several intervenors respond to defend the validity of the regulations. The Friends make three claims: (1) that ch. Comm 83 does not comply with a statutory mandate to incorporate groundwater protection standards; (2) that § Comm 83.24 exceeds the department's authority to grant variances; and (3) that the department's authority to exempt private systems from meeting nitrate standards was improperly delegated and exercised. We reject the Friends' assertions and affirm.

## BACKGROUND

¶ 2. The Friends brought this action to obtain a declaratory judgment invalidating WIS. ADMIN. CODE ch. Comm 83. *See* WIS. STAT. § 227.40(1) (1999–2000).[2] The department comprehensively revised ch. Comm 83, which regulates "private onsite wastewater treatment systems," effective July 1, 2000. Under § 227.40(4)(a), "the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated without compliance with statutory rule-making proce-

[1] The League of Wisconsin Municipalities was also a plaintiff in the declaratory judgment action but does not join in this appeal. We will refer to the plaintiffs-appellants, collectively, as "the Friends."

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

dures." The Friends' challenge encompasses the first two grounds for setting aside a rule, violations of the constitution and statutes, but not the third, procedural ground. Accordingly, we will not describe the department's process in promulgating the revised ch. Comm 83 beyond noting that it spanned several years, involved numerous drafts and public hearings, and spawned an extensive administrative record.

¶ 3. "No agency may promulgate a rule which conflicts with state law." WIS. STAT. § 227.10(2). The principal dispute in this appeal is whether the revised rule complies with the statutory requirement that all applicable state regulations ensure compliance with Wisconsin's groundwater protection standards, as established by the Department of Natural Resources (DNR) under WIS. STAT. ch. 160:

> The legislature intends, by the creation of this chapter, to minimize the concentration of polluting substances in groundwater through the use of numerical standards in all groundwater regulatory programs. *The numerical standards, upon adoption, will become criteria for the protection of public health and welfare, to be achieved in groundwater regulatory programs concerning the substances for which standards are adopted.* To this end, the legislature intends that:

> . . . .

> (4) In order to comply with this chapter, a regulatory agency is not required to adopt a particular type of regulation; regulatory agencies are free to establish any type of regulation which assures that regulated facilities and activities will not cause the concentration of a substance in groundwater affected by the facilities or activities to exceed the enforcement standards and preventive action limits under this chapter at a point of standards application. *A regulatory agency may adopt*

188

*regulations which establish specific design and management criteria for regulated facilities and activities, if the regulations will ensure that the regulated facilities and activities will not cause the concentration of a substance in groundwater affected by the facilities or activities to exceed the enforcement standards and preventive action limits under this chapter at a point of standards application.*

Section 160.001 (emphasis added).[3] The DNR has established the numerical standards authorized by ch. 160 in WIS. ADMIN. CODE ch. NR 140.

¶ 4. While it is the DNR that establishes numerical standards for the protection of groundwater under WIS. STAT. ch. 160, the legislature has delegated to the Department of Commerce the authority to supervise the "construction, installation and maintenance of plumbing" in order to "safeguard the public health and the waters of the state." WIS. STAT. § 145.02(1). The plumbing code, of which WIS. ADMIN. CODE ch. Comm 83 is a part, must "comply with ch. 160." WIS. STAT. § 145.13. In its "Record of Decision," the department found, among other things, the following:

6. The current Chapter Comm 83, Wis. Adm. Code, and related rules have not been fully revised since 1980.

7. The Department is required by Section 160.19, Wis. Stats., to review its rules for compliance with the groundwater protection standards promulgated in Chapter NR 140, Wis. Adm. Code.

. . . .

---

[3] A "regulatory agency" is a state agency which regulates "activities, facilities or practices which are related to substances which have been detected in or have a reasonable probability of entering the groundwater resources of the state," specifically including the Department of Commerce. WIS. STAT. § 160.01(7).

11. The Department finds that properly functioning [private systems] as approved under the current rule are not a risk to public health. The proposed rule will require equal or better treatment of domestic wastewater as the current rule.

12. Failing [private systems] may pose a risk of contamination of groundwater and surface waters and may create surface ponding conditions that are a risk to public health. Compared to the current rule, the proposed rule provides additional measures for maintenance and enforcement to minimize failures.

13. The proposed rule contains a range of responses the Department may undertake if exceedences of groundwater standards are found. Any type of [private system] may have incidental exceedences of groundwater standards. These are not expected to result in significant adverse impacts to groundwater quality.

¶ 5. In the "Discussion" section of its "Final Decision," the department said that the proposed rule "requires technologies to satisfy" the DNR's groundwater standards. The department noted further that the former rule "lacks reference to the groundwater standards of Chapter NR 140," and that the proposed rule incorporates the standards. Commenting on its decision to not include "final effluent standards" in the rule, the department said this:

The Department has determined that final effluent quality standards are not needed. They are not required by the groundwater protection law. The proposed rule requires compliance with Chapter NR 140, Wis. Adm. Code, standards . . . .

In written testimony submitted to the legislative committee reviewing the proposed revision of ch. Comm 83, a DNR representative said that the DNR had concluded

"systems designed and installed under proposed Comm 83 would, in most cases, achieve state groundwater standards conformance." He also reported that a revision, agreed to by the department, which increased "the required separation from groundwater or bedrock . . . coupled with additional research" had addressed the DNR's concerns regarding the standards for "total coliform" bacteria.

¶ 6. The circuit court concluded in a bench decision that ch. Comm 83, as promulgated by the department, neither exceeded its statutory authority nor violated constitutional provisions. Accordingly, it entered an order denying the Friends' request for a declaratory judgment invalidating the rule, and the Friends appeal. Additional background information, in particular regarding variances and the exemption from nitrate standards, is provided in the analysis which follows.

## ANALYSIS

¶ 7. The parties do not dispute that the legislature has empowered the department to promulgate rules regulating the design, installation and maintenance of private wastewater systems. *See, e.g.,* WIS. STAT. §§ 145.02; 145.13; 145.20(3). The Friends characterize the first issue in their appeal as being "whether [WIS. ADMIN. CODE ch.] Comm 83 ensures that the new systems will comply with the numerical groundwater standards under [WIS. STAT.] Chapter 160." The Friends' contention that the rule does not comply with the statute raises a claim that the rule exceeds the department's statutory authority. *See Seider v. O'Connell,* 2000 WI 76, ¶¶ 24, 28, 236 Wis. 2d 211, 612 N.W.2d 659.

¶ 8. Our review is de novo, but in deciding this question of law, we are to derive "benefit" from the experience and analyses of administrative agencies empowered by the legislature to administer the laws it enacts. *Id.* at ¶¶ 25–27. Here, the record reflects that both the department and the DNR have concluded that ch. Comm 83 conforms to the requirements of ch. 160 regarding state groundwater protection standards. While acknowledging these conclusions, we nonetheless have a duty to independently determine whether the department has complied with legislative mandates. *Id.* We therefore reject the department's request that we accord its decision to promulgate the rule in its final form the same deference we would apply if the question it had decided were one of fact, or one of law not going to the scope of its authority in promulgating the rule.[4]

¶ 9. We conclude that under the supreme court's guidance in *Seider*, our task is to determine whether WIS. ADMIN. CODE ch. Comm 83 contradicts "either the language of [WIS. STAT. ch. 160] or legislative intent." *Seider*, 2000 WI 76 at ¶ 72. If it conflicts with either, ch. Comm 83 "is not reasonable, exceeds the [department]'s

[4] The intervenors, who respond separately to the Friends' appeal, are perhaps closer to the mark when they assert that the decision to promulgate the revised ch. Comm 83 is entitled to a measure of judicial deference because the department: (1) "engaged in extensive rule-making proceedings before promulgation of its final rules"; (2) "held several hearings around the state"; and (3) "received numerous comments about its draft rules, including comments about the central issue in this case." *Richland Sch. Dist. v. DILHR*, 174 Wis. 2d 878, 892, 498 N.W.2d 826 (1993); *see also Seider v. O'Connell*, 2000 WI 76, ¶ 69, 236 Wis. 2d 211, 612 N.W.2d 659.

statutory authority, and must be invalidated." *Id.* at ¶ 73. Conversely, if we ascertain no conflict with either the language of WIS. STAT. ch. 160 or the legislature's intent in enacting the chapter, we must conclude that the rule is reasonable, within the department's authority and valid.

¶ 10. Put another way, we will invalidate the department's rule only if we are convinced that it contravenes an unambiguous statutory requirement or a clear expression of legislative intent, and the burden is on the Friends to so convince us. *Cf. Citizens' Util. Bd. v. PSC*, 211 Wis. 2d 537, 552–53, 565 N.W.2d 554 (Ct. App. 1997). They have not. Our role is not to substitute our judgment for the department's in determining how best to implement or comply with the relevant statutes, and to that extent, our review is deferential to the department's rulemaking authority and expertise. (See footnote 4.)

¶ 11. The Friends first argue that WIS. ADMIN. CODE ch. Comm 83 fails to comply with WIS. STAT. ch. 160 because the rule does not "incorporate" numerical groundwater enforcement standards in the design criteria for private wastewater systems. They point out that §§ Comm 83.40 and .41, dealing with system design and installation, refer to goals of "[s]afeguarding public health" and preventing "human health hazard[s]." They also note that the subchapter on design "does not say that a [private system] must be designed in conformance with Chapter 160 groundwater standards." The Friends are particularly critical of § Comm 83.44, which they assert establishes performance standards for the quality of influent going into the soil component of a system, but does not require that the effluent reaching groundwater meet ch. 160 standards.

¶ 12. WISCONSIN ADMIN. CODE ch. Comm 83 is also deficient, according to the Friends, because it does not "utilize" WIS. STAT. ch. 160 groundwater standards in "regulating practices and activities" associated with private systems. The Friends acknowledge that the rule prohibits owners of private systems from introducing "wastewater or substances in such quantities or concentrations . . . that results in exceeding the enforcement standards and preventative action limits specified in ch. NR 140 . . . ." Section Comm 83.32(1)(a). They assert, however, that the rule improperly places "the entire burden on homeowners who may not have the knowledge, financial ability, interest or discipline to maintain these systems." To comply with ch. 160, the Friends contend that the department should have ensured regular maintenance of the systems by requiring government ownership of the systems, prohibiting installation in the absence of a servicing contract, or demanding "reporting on a regular schedule."

¶ 13. The department found in its Record of Decision that: (1) WIS. ADMIN. CODE ch. Comm 83 "requires technologies to satisfy" the groundwater standards; (2) the rule "requires compliance with Chapter NR 140, Wis. Adm. Code, standards," except for nitrates and the preventative action limit for chloride, which are not required; and (3) "data . . . indicate[s] that systems designed and maintained in accordance with the proposed rule will meet the groundwater standards at a well . . . although . . . exceptions may occur." As we have described, the DNR concurred that ch. Comm 83 complies with WIS. STAT. ch. 160, and its representative testified that DNR "supports this rule because," among other things, it represented an improvement over the existing rule in "[g]roundwater standards conformance."

¶ 14. The Friends do not expressly argue that the department (or the DNR) erred as a factual matter in determining that private systems which are designed, installed and maintained in conformity with WIS. ADMIN. CODE ch. Comm 83 requirements will meet WIS. STAT. ch. 160 groundwater protection standards. If they had, our review of this factual determination would be deferential. *Cf. Liberty Homes, Inc. v. DILHR*, 136 Wis. 2d 368, 393, 401 N.W.2d 805 (1987) ("We will not independently weigh the evidence . . . . Our task is simply to ascertain whether [an agency's rule] is reasonably supported by *any facts in the record.*") The Friends' challenge thus rests on an assertion that the department should have included more, or more specific, references to the groundwater standards established under ch. 160 in the text of the rule.

¶ 15. We now examine the provisions of WIS. STAT. ch. 160 with which the Friends claim WIS. ADMIN. CODE ch. Comm 83 fails to comply. They point first to § 160.001 (quoted above at ¶ 3), which explains the legislature's intent that the numerical groundwater standards "will become criteria for the protection of public health and welfare, to be achieved in groundwater regulatory programs." Section 160.001. More specifically, under § 160.001(4), any regulations which "establish specific design and management criteria for regulated facilities and activities," must "ensure that the regulated facilities and activities will not cause the concentration of a substance . . . to exceed the enforcement standards and preventive action limits under [ch. 160]." WISCONSIN STAT. § 160.19(1) requires agencies to review their rules and amend them as necessary "to ensure that the activities, practices and facilities regulated by the regulatory agency will comply with this chapter." Finally, an "agency may not promulgate rules

defining design and management practice criteria which permit an enforcement standard to be attained or exceeded at the point of standards application." Section 160.19(3).

¶ 16. All of the cited provisions require regulatory agencies to ensure that their rules result in compliance with the numerical groundwater standards established under ch. 160, but none requires that a rule must expressly incorporate or refer to the standards. We conclude that WIS. ADMIN. CODE ch. Comm 83 does not fail for lack of compliance with the language of WIS. STAT. ch. 160 because we find no requirement that the statutory standards must be incorporated into the text of an agency rule.

¶ 17. Moreover, we note that WIS. ADMIN. CODE ch. Comm 83 *does* specifically refer to the groundwater standards in several places. The department noted in its Record of Decision that its predecessor rule lacked any reference to the groundwater standards of WIS. ADMIN. CODE ch. NR 140, but that the present ch. Comm 83 expressly incorporates them. For example, § Comm 83.32(1)(a) prohibits "the introduction of wastewater or substances in such quantities or concentrations" to a private system "that results in exceeding the enforcement standards and preventive action limits specified in ch. NR 140 Tables 1 and 2 at a point of standards application." And, under § Comm 83.29, the department's "range of responses" to a groundwater standards exceedence are spelled out:

> Pursuant to s. 160.21, Stats., the department may respond with any one or more of the actions delineated under Table 83.29 if the preventive action limits or enforcement standards enumerated in ch. NR 140

Tables 1 and 2 are exceeded at a point of standards application as a result of the performance of a [private system] . . . .

Section Comm 83.29(1)(a).

■

¶ 18. We next consider whether, notwithstanding the lack of a conflict between WIS. ADMIN. CODE ch. Comm 83 and the language of WIS. STAT. ch. 160, the rule nonetheless contravenes legislative intent. Our consideration is brief because one of the sections on which the Friends rely plainly expresses the legislature's intention to grant regulatory agencies considerable latitude in constructing rules that comply with ch. 160:

> In order to comply with this chapter, a regulatory agency is not required to adopt a particular type of regulation; regulatory agencies are free to establish any type of regulation which assures that regulated facilities and activities will not cause the concentration of a substance in groundwater affected by the facilities or activities to exceed the enforcement standards and preventive action limits under this chapter at a point of standards application.

Section 160.001(4). This statement of legislative intent reinforces our conclusion that express textual incorporation of or reference to the numerical standards is not a requirement of ch. 160, so long as the rules in question achieve the required results.[5]

---

[5] The Friends rely in part on an opinion by the Attorney General, OAG 3-99 (June 15, 1999), to persuade us that WIS. ADMIN. CODE ch. Comm 83 fails to comply with WIS. STAT. ch. 160. The Attorney General opined that "rules incorporating Risk-Based Corrective Action . . . for the remediation of petroleum contamination in groundwater" would be inconsistent with ch.

¶ 19. The Friends' second challenge focuses on a specific section of the new rule. Their claim is that Wis. Admin. Code § Comm 83.24 conflicts with an express statutory limitation on the department's authority to grant variances. Section Comm 83.24 provides as follows:

**Petitions for variance.**

(1) The department shall consider and may grant a variance to a provision of this chapter in accordance with ch. Comm 3.

Note: The petition for variance process is to allow the owner of a proposed or existing [private wastewater system] to ask the department's recognition of an alternative method or means for complying with the intent of a specific rule.

(2) (a) Pursuant to s. 145.24, Stats., the department may not approve a petition for variance for an existing [private system] which is determined to be a failing private onsite wastewater treatment system.

(b) For the purposes of this subsection, the department shall consider a petition for variance if the existing [private system] is not considered a failing private onsite wastewater treatment system.

¶ 20. The Friends contend that Wis. Admin. Code § Comm 83.24 "conflicts with the express limita-

---

160. 3 Op. Att'y Gen. 1 (1999). The opinion, however, is of little assistance on the present facts. The department acknowledges that its plumbing rules must comply with ch. 160 standards and requirements. The question before us is whether ch. Comm 83 does so. The fact that a different proposed rule, addressing a different topic altogether, may have failed to satisfy statutory mandates, sheds little light on whether the present rule satisfies them.

tion of § 145.24, Wis. Stats., which authorizes variances *only* for existing nonfailing" private systems (emphasis added). The statute provides as follows:

**145.24 Variances.**

(1) If an existing private sewage system either is not located in soil meeting the siting standards or is not constructed in accordance with design standards promulgated under s. 145.02 or 145.13, the owner of the private sewage system may petition the department for a variance to the siting or design standards.

(2) The department shall establish procedures for the review and evaluation of existing private sewage systems which do not comply with siting or design standards.

(3) Upon receipt of a petition for a variance, the department shall require the owner of the private sewage system to submit information necessary to evaluate the request for a variance. If the department determines that the existing private sewage system is not a failing private sewage system, and continued use of the existing private sewage system will not pose a threat of contamination of waters of the state, then the department may issue a variance to allow continued use of the existing private sewage system. The department shall rescind the variance if the existing private sewage system becomes a failing private sewage system or contaminates waters of the state.

According to the Friends, because Wis. Admin. Code § Comm 83.24 purports to allow the department to grant variances for proposed new systems, it violates Wis. Stat. § 145.24 and must be declared invalid. We disagree.

199

¶ 21. Section 145.24 addresses a specific circumstance—existing systems which do not conform to applicable siting or design standards. The statute limits the department's authority to grant a variance in that circumstance only to an existing system that is not failing. The statute says nothing about the department's authority to grant variances for proposed new systems. Because the statute is silent regarding variances for proposed new systems, the Friends advance an *expressio unius* argument.[6] We reject it, however, because there is no indication that the legislature intended § 145.24 to be the beginning and the end of the department's authority to grant variances relating to private sewage systems. *See Pritchard v. Madison Metro. Sch. Dist.*, 2001 WI App 62, ¶ 13, 242 Wis. 2d 301, 625 N.W.2d 613, *review denied*, 2001 WI 88, 246 Wis. 2d 166, 630 N.W.2d 220 (Wis. May 8, 2001) (No. 00-0848) (Court will apply *expressio unius* rule only where it has "some evidence the legislature intended its application."). Rather, as we discuss below, we conclude that the legislature has granted the department broad authority to grant exceptions and variances from its rules, including WIS. ADMIN. CODE ch. Comm 83.

■

¶ 22. We agree with the department that its general authority to grant exceptions or variances from its rules and regulations derives from WIS. STAT. § 101.02(6)(e)-(h). *See, e.g.,* § 101.02(6)(h) ("[I]f it shall be found that the order complained of is unjust or unreasonable the department shall substitute therefor such other order as shall be just and reasonable."); § 101.01(9) (" 'Order' means any decision, rule,

---

[6] *"Expressio unius est exclusio alterius"* is a "canon of construction holding that to express or include one thing implies the exclusion of the other." BLACK'S LAW DICTIONARY 602 (7th ed. 1999).

[or] regulation . . . of the department."). Further indication that the department's general authority to grant variances extends to provisions of the plumbing code are found in Wis. Stat. §§ 145.02(2) and (3), and 145.13. The former statute directs the department to establish and enforce plumbing standards "which shall be uniform and of statewide concern *so far as practicable*," § 145.02(2) (emphasis added), and it grants the department "such powers as are reasonably necessary to carry out the provisions of this chapter." Section 145.02(3). Section 145.13 directs that "[a]ll plumbing installations shall *so far as practicable* be made to conform with" the code. (Emphasis added.)

¶ 23. In short, we conclude that Wis. Admin. Code § Comm 83.24 neither conflicts with the express language of Wis. Stat. § 145.24 nor contravenes the legislature's intent regarding the department's authority to grant variances. That section of the rule, like ch. Comm 83 as a whole, is therefore reasonable, within the department's authority and valid. *See Seider*, 2000 WI 76 at ¶¶ 72–73.

¶ 24. The Friends' final claim raises a constitutional challenge. The legislature has provided in Wis. Stat. § 160.255(3) that "a regulatory agency may promulgate rules that define design or management criteria for private sewage systems that permit the enforcement standard for nitrate to be attained or exceeded." The Friends claim that, because this delegation of authority to the department "contains no express or implied standard" for the department to apply when deciding whether to exempt nitrates, it violates the "Separation of Powers doctrine." Therefore, according to the Friends, the department's exercise of that authority in Wis. Admin. Code § Comm 83.03(4) must be

invalidated.[7] *See J.F. Ahern Co. v. Wisconsin State Bldg. Comm'n,* 114 Wis. 2d 69, 89, 336 N.W.2d 679 (Ct. App. 1983) (noting that whether a power delegated to an agency "is constitutionally permissible . . . depends on whether its exercise is controlled by adequate standards").

¶ 25. We agree with the intervenors, however, that WIS. STAT. § 160.255 represents a decision *by the legislature* to remove nitrates as a mandatorily regulated substance as far as private sewage systems are concerned. In creating ch. 160, the legislature established a broad and comprehensive regulatory scheme aimed at protecting the state's groundwater. It also created an exception which permits private sewage systems to exceed the numerical standards established for nitrates. Although it is true that the department could at some point elect to subject private sewage systems to the nitrate standards, this fact does not render the exception unconstitutional.

¶ 26. The legislature has broadly empowered the department to supervise plumbing in Wisconsin for the purpose of ensuring that all plumbing installations are "safe, sanitary and such as to safeguard the public health and the waters of the state." WIS. STAT. § 145.02(1). We agree with the department that this standard provides adequate legislative guidance under which the department could decide to regulate nitrates in private sewage systems, just as it does other substances or concerns that affect "the public health

---

[7] WISCONSIN ADMIN. CODE § Comm 83.03(4)(a) provides as follows: "Pursuant to [WIS. STAT. §] 160.255, the design, installation, use or maintenance of a [private sewage system] is not required to comply with the nitrate standard specified in ch. NR 140 Table 1 ... ."

and the waters of the state" that are not specifically addressed by Wɪs. Sᴛᴀᴛ. ch. 160 groundwater protection standards.

■

¶ 27. Alternatively, the Friends argue that even if Wɪs. Sᴛᴀᴛ. § 160.255 is not constitutionally defective, the department erred in not requiring private sewage systems to meet the requisite nitrate standards. They claim the department should not have left nitrates to local regulation via zoning,[8] and it should not have engaged in a "cost-benefit" analysis in deciding not to apply the nitrate standard to private systems statewide. We are not persuaded by the Friends' arguments that the department somehow exceeded its statutory authority in promulgating Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § Comm 83.03. Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 160.255 expressly authorizes the department to do precisely what it did, and thus the Friends' final contention is reduced to a claim that the department *should not* have exempted private systems from the nitrate standards, not that it *could not* do so. That is not a basis for invaliding a rule under Wɪs. Sᴛᴀᴛ. § 227.40(4), however. We will not substitute our judgment for that of the department regarding the wisdom of the rule it adopted. *See Liberty Homes, Inc.,* 136 Wis. 2d at 393 ("We will not independently . . . determine whether the agency made the 'best' choice.").

---

[8] Wɪsᴄᴏɴsɪɴ Aᴅᴍɪɴ. Cᴏᴅᴇ § Comm 83.03(5) provides that "[t]his chapter does not affect municipal requirements relating to land use, zoning, or other similar requirements, including, pursuant to [Wɪs. Sᴛᴀᴛ. §] 59.69, establishing nitrate requirements to encourage the protection of groundwater resources."

## CONCLUSION

¶ 28. For the reasons discussed above, we conclude that the circuit court did not err in declining to declare WIS. ADMIN. CODE ch. Comm 83 invalid.

*By the Court.*—Order affirmed.